UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In Re:                                           :
                                                 :            **OPINION AND ORDER**
VERONICA C. HOSKING,                             :
                Debtor.                          :            15 CV 3999 (VB)
--------------------------------------------------------------x
RUSHMORE LOAN MANAGEMENT                         :
SERVICES LLC,                                    :
                Appellant,                       :
v.                                               :
                                                 :
VERONICA C. HOSKING,                             :
                Appellee.                        :
--------------------------------------------------------------x

Briccetti, J.:

      Appellant Rushmore Loan Management Services LLC ("Rushmore") appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Hon. Cecelia G. Morris, C.J.), following a finding that Rushmore failed to participate in good faith in the bankruptcy court's loss mitigation program. The order sanctioned Rushmore for appellee Veronica Hosking's expenses and attorney's fees, and held Rushmore in contempt.

      For the following reasons, the order is AFFIRMED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

      On January 31, 2014, in an attempt to save her home from foreclosure, Ms. Hosking filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. At the time of filing, the amount of Ms. Hosking's mortgage arrears was $18,112.26 and the principal balance due was $126,534.39.

1

Ms. Hosking filed a Chapter 13 plan that requested loss mitigation with Rushmore, the servicer for secured creditor U.S. Bank, National Association.[1] See U.S. Bankruptcy Court, S.D.N.Y., Local Rule 9019-2.  Loss mitigation is a program that "function[s] as a forum for debtors and lenders to reach consensual resolution whenever a debtor's residential property is at risk of foreclosure by opening the lines of communication between the debtors' and lenders' decision-makers."  The Hon. Cecelia G. Morris & Mary K. Guccion, The Loss Mitigation Program Procedures for the United States Bankruptcy Court for the Southern District of New York, 19 Am. Bankr. Inst. L. Rev. 1, 4 (2011).  The loss mitigation program does not compel parties to modify the loan, but does compel the parties to participate in good faith.  Id.

The bankruptcy court entered a loss mitigation order on July 8, 2014.  The order required Rushmore to provide Ms. Hosking with contact information of a person who has full settlement authority on her loan.

On August 8, 2014, Ms. Hosking's attorney submitted a loan modification proposal to Rushmore.  Rushmore's initial response letter, dated August 11, 2014, stated that "[m]ost of our loan owners require that you make a good faith payment in connection with a trial payment plan." (Appx. 303).[2]  The letter informed Ms. Hosking her request for a loan modification was incomplete because she was required to submit three months' paystubs, three months' bank statements, and "[p]roof of funds for the down payment."  (Id. 304).

The following day, Rushmore's counsel filed an affidavit with the bankruptcy court, stating, "[a]t this time, no documents are being requested.  Documents were recently provided

---

[1]  The creditor is not a party in its individual capacity, but solely as trustee for a trust.
[2]  All citations to "Appx." refer to the Joint Appendix comprising the documents designated for the record on appeal.  (Doc. #17).

and are currently being reviewed." (Appx. 118). The affidavit designated Angeline Horner, an asset resolution specialist at Rushmore, as Ms. Hosking's designated loss mitigation contact.

On August 20, 2014, Ms. Hosking's counsel sent three months' bank statements, paystubs, and pension statements to Rushmore's counsel. Then, on September 2, 2014, Rushmore filed an affidavit instructing Ms. Hosking to provide "proof of down payment or letter of explanation as to why no down payment [is] available." (Appx. 143). Three days later, Ms. Hosking's counsel emailed Rushmore's counsel, asking for "clarification on the 'proof of down payment.'" (Id. 335). Rushmore's counsel responded stating, "our client requires a down payment. . . . If your client is unable to make a down payment, a letter of explanation, signed and dated, must be provided." (Id.).

On September 9, 2014, Rushmore's counsel sent an email to Ms. Hosking's counsel stating, "as we have not received any information in regards to a down payment, your client's request [for a loan modification] is being processed with no down payment." (Appx. 340). The same day, Rushmore sent Ms. Hosking a letter nearly identical to its August 11, 2014, letter, noting, "[m]ost of our loan owners require that you make a good faith payment." (Id. 342).

On September 24, 2014, Ms. Hosking's attorney filed a letter stating, "[t]he creditor's attorney has informed us that the request for a loan modification is being processed with no down payment." (Appx. 146). Two days later, Rushmore's attorney filed a status report letter confirming that Ms. Hosking's "loss mitigation was moving forward with no down payment offer," and Ms. Hosking's "file is currently under review for a [loan modification] decision." (Id. 147).

Rushmore denied Ms. Hosking's loan modification application via form letter on October 7, 2014. The letter states that "[a]ny item marked with an X next to it represents a reason for our

denial of your request for the loan modification." (Appx. 151). The only X in the letter is next to the phrase, "[t]he amount of good faith down payment is insufficient to offer a loan modification." (Id. 152). Counsel for Rushmore informed the court of its client's denial in a December 15, 2015, status letter, stating, "the debtor's loan modification was denied as she could not provide a good faith down payment." (Id. 150).

The court held a hearing on December 17, 2014, and Lori Gilmore Morris appeared on behalf of Rushmore. The court expressed surprise that Rushmore required a down payment from Ms. Hosking to consider her loan modification application. The court ordered that a "senior VP . . . with authority" appear at a subsequent hearing scheduled for January 21, 2015. (Appx. 159).

At the January 21 hearing, Mike Aiken, a Vice President at Rushmore, informed the court that Ms. Hosking was denied for a loan modification for failure to provide proof she could pay 25% of the amount in arrears. Mr. Aiken told the court the 25% requirement was based on "investor guidelines." (Appx. 413-14). When the court requested to see the guidelines, Mr. Akin stated the guideline "isn't necessarily a written document, more than it's a gentleman down the hall." (Id. 415). The court directed the guidelines be produced and ordered the "person . . . who made the denial" appear at a subsequent hearing. (Id. 416).

The court held a third hearing on February 25, 2015. William Bell of Roosevelt Management Company, LLC, an investment firm that purchases mortgages, testified on behalf of Rushmore. Mr. Bell explained that Rushmore is a mortgage servicer for Roosevelt, he had written the investor guidelines, and he reviewed and approved loan modifications. Testifying about the down payment requirement, Mr. Bell said "[w]e will target that the customer will provide 25% of the arrears as a good faith down payment on a trial loan modification." (Appx. 436). Mr. Bell also testified the 25% target was not required in every case and that he could

overrule the guidelines because he had "final authority to make decisions on loan modifications." (Id. 433).

Mr. Bell was unaware Rushmore had advised Ms. Hosking to write a letter of explanation if she was unable to make a down payment. He testified that he has never granted a modification in a case similar to Ms. Hosking's when the borrower was unable to make a down payment but offered a letter of explanation. (Appx. 476).

The bankruptcy court issued a Memorandum Decision on April 20, 2015, finding Rushmore failed to participate in good faith in the loss mitigation program because it (i) denied Ms. Hosking's application for a loan modification for failing to provide a down payment without notifying her of a down payment requirement, and (ii) failed to designate someone with full settlement authority. Because Rushmore failed to act in good faith and failed to comply with the bankruptcy court's loss mitigation order, the bankruptcy court held Rushmore in contempt of the loss mitigation order.[3] The bankruptcy court ordered Ms. Hosking's counsel to file an accounting of her expenses and fees to calculate the sanctions amount. (Appx. 629-45).

On May 15, 2015, the bankruptcy court issued an order awarding Ms. Hosking attorney fees and costs totaling $3,525.94. (Appx. 653-54). On May 22, 2015, Rushmore filed a notice of appeal.

---

[3] The bankruptcy court cited the loss mitigation procedures as the source of its power to issue sanctions, but those procedures do not offer a statutory source for sanctions resulting from a failure to participate in loss mitigation in good faith. The bankruptcy court's power to issue sanctions under these circumstances stems from the court's "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders." In re Bambi, 492 B.R. 183, 190 (Bankr. S.D.N.Y. 2013) (citing Mickle v. Morin, 297 F.3d 114, 125 (2d Cir. 2002)). The bankruptcy court cited 11 U.S.C. § 105(a) and Fed. R. Bank. P. 9020 as sources for its power to hold Rushmore in civil contempt. To the extent Rushmore argues the bankruptcy court lacked the authority to impose sanctions, that argument is unavailing.

## DISCUSSION

I. <u>Standard of Review</u>

A district court reviews a bankruptcy court's conclusions of law <u>de novo</u> and its findings of fact under a clearly erroneous standard.  See <u>In re Ames Dep't Stores, Inc.</u>, 582 F.3d 422, 426 (2d Cir. 2009) (citing <u>In re Momentum Mfg. Corp.</u>, 25 F.3d 1132, 1136 (2d Cir. 1994)).

A bankruptcy court's award of sanctions may be set aside only for abuse of discretion. See <u>In re Kalikow</u>, 602 F.3d 82, 91 (2d Cir. 2010).  A court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." <u>Id</u>. (quoting <u>In re Highgate Equities, Ltd.</u>, 279 F.3d 148, 152 (2d Cir. 2002)).  A finding is "clearly erroneous" when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." <u>Zervos v. Verizon N.Y., Inc.</u>, 252 F.3d 163, 168 (2d Cir. 2001) (citation omitted).  A court abuses or "exceeds" its discretion "if its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." <u>Id</u>. at 169.

Contempt orders are also reviewed for abuse of discretion, but the review "is more exacting than under the ordinary abuse-of-discretion standard because a [bankruptcy] court's contempt power is narrowly circumscribed." <u>Perez v. Danbury Hosp.</u>, 347 F.3d 419, 423 (2d Cir. 2003).

II. <u>Sanctions</u>

The loss mitigation program procedures for the bankruptcy court of the Southern District of New York permit sanctions when a party fails to negotiate in good faith.  (U.S. Bankruptcy Court, S.D.N.Y., Local Rule 9019-2, <u>Loss Mitigation Program Procedures</u>, at 5, <u>available</u> <u>at</u> http://www.nysb.uscourts.gov/sites/default/files/LossMitigationProcedures.pdf).

6

Although "[g]ood faith is an elusive idea, taking on different meanings and emphases as we move from one context to another," Black's Law Dictionary (10th ed. 2014), a few courts have attempted to define good faith in the context of loss mitigation. See, e.g., In re Doble, 2014 WL 6955350 (Bankr. D.N.J. Oct. 2, 2014). For example, in In re Bambi, the bankruptcy court imposed sanctions on a lender that misled debtors by making them believe modification was an option for eight months before informing the debtors that the lender did not modify loans. 492 B.R. 183, 188 (Bankr. S.D.N.Y. 2013). The court stated good faith requires parties to attend conferences, provide requested memoranda, and produce representatives with settlement authority. See id. "[P]arties are expected to communicate openly with each other," and "share basic information, including the basic financial information of the Debtor and the basic parameters that the Debtor must meet in order to be considered for a loan modification." Id.

Here, the bankruptcy court held that Rushmore failed to participate in loss mitigation in good faith because it (i) failed to inform the debtor of the down payment requirement for a loan modification, and (ii) failed to designate a contact with full settlement authority.

    A.    <u>Down Payment Requirement for Loan Modification</u>

Rushmore argues Ms. Hosking "was fully apprised of the down payment requirement [to receive a loan modification] and even acknowledged same." (Appellant's Br. at 15). The Court finds otherwise.

Of all the communications between the parties about Ms. Hosking's loan modification application, only the initial August 11, 2014, letter stated her application was incomplete because it did not contain "[p]roof of funds for the down payment." (Appx. 304). But the very next day, Rushmore's counsel filed an affidavit affirming that "no documents are being requested" of Ms. Hosking. (Id. 118).

Importantly, every subsequent communication by Rushmore's counsel to Ms. Hosking, her counsel, or the bankruptcy court either expressly or implicitly indicated Ms. Hosking could receive a loan modification without a down payment if she provided a letter of explanation. (See Appx. 143, 147, 333, 335, 340, 350). Rushmore argues Ms. Hosking's attorney acknowledged the down payment requirement at the December 17, 2014, hearing. But Rushmore overlooks Ms. Hosking's counsel's unequivocal statement at the hearing that Rushmore "indicated that if [Ms. Hosking] was unable to provide a down payment she needed to provide the reason in writing." (Id. 158).[4]

Thus, the bankruptcy court's factual finding that Ms. Hosking was not apprised of the down payment requirement before her loan modification application was denied was not erroneous, clearly or otherwise. And given that Rushmore did not inform Ms. Hosking of the down payment requirement when it required a down payment of 25% of the amount in arrears, the court's imposition of sanctions was not an abuse of discretion.

When, as here, a loss mitigation order requires parties to participate in good faith, a creditor violates the good faith requirement by failing to disclose the basic requirements the debtor must meet to be considered for a loan modification. Rushmore's representations to Ms. Hosking that her loan modification application could be processed without a down payment if she provided a letter of explanation obfuscated its basic requirements for a loan modification.

---

[4]    Moreover, the December 17, 2014, hearing was several weeks after counsel exchanged letters and emails about the requirements for Ms. Hosking's loan modification application, and several weeks after the letter denying her application. Had Ms. Hosking's attorney actually acknowledged or understood there to be a down payment requirement, the pertinent time period to rebut the bankruptcy court's finding of bad faith would be prior to Rushmore's denial of the loan modification application.

This led to more than two months of delays that may have been avoided had Rushmore communicated its loan modification requirements to Ms. Hosking.[5]

Accordingly, the bankruptcy court's sanctions based on Rushmore's failure to participate in the loss mitigation in good faith was not an abuse of the bankruptcy court's discretion.

B.  Designation of Contact with Settlement Authority

Rushmore argues the bankruptcy court incorrectly held it failed to participate in loss mitigation in good faith for failing to designate someone with full settlement authority because the court never reached any factual determination about the issue prior to its order issuing sanctions.

The Court agrees.

Federal courts have "inherent power" to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation or "willful disobedience" of a court order. Roadway Express, Inc. v. Piper, 447 U.S. 752, 766-767 (1980).  However, attorneys and parties are entitled to notice and an opportunity to respond prior to the imposition of sanctions.  In re Stein, 127 F.3d 292, 294 (2d Cir. 1997).

Here, Rushmore designated Angeline Horner as the loss mitigation contact, and the bankruptcy court held she never participated in the loss mitigation process and did not have settlement authority.  However, at the hearings on December 17, 2014, January 21, 2015, and February 24, 2015, the bankruptcy court never addressed Ms. Horner's settlement authority or whether Rushmore failed to designate someone with full settlement authority.  Rushmore was

---

[5]  Rushmore argues "any delays in this case are caused by [Ms. Hosking]" because her counsel failed to serve the loss mitigation order on Rushmore for several months. (Appellant's Br. at 19-20).  Nevertheless, the record supports the bankruptcy court's finding that Rushmore caused unnecessary delays after the loss mitigation order went into effect.

not provided with an opportunity to address whether it failed to designate a contact with full settlement authority. Thus, the bankruptcy court's finding that Ms. Horner did not have settlement authority exceeded the court's discretion.

Nevertheless, the bankruptcy court's order imposing sanctions on Rushmore was only partially based on the court's finding that Rushmore failed to designate a contact with settlement authority. Just because the bankruptcy court erred by failing to give Rushmore an opportunity to respond to one of its bases for sanctions, that does not mean Ms. Hosking's "actual damages incurred in participating in this loss mitigation process" are any less than the $3,525.94 sanctions award. In re Hosking, 528 B.R. 614, 624 (Bankr. S.D.N.Y. 2015). The harm for which the sanctions were imposed—i.e. Ms. Hosking's "participat[ion] in this Court's Loss Mitigation Program for approximately four months before receiving notice that she was denied for failure to provide proof of a down payment"—would not have been attenuated had the bankruptcy court refused to reach a finding about Rushmore's designation of a contact with settlement authority. Id.

In sum, although one of its bases for imposing sanctions was invalid, the bankruptcy court's sanctions order was not an abuse of discretion and is affirmed.

III.  Contempt

Rushmore also argues the bankruptcy court "use[d] its contempt powers to further enforce its own Loss Mitigation Program in furtherance of an undefined objective." (Appellant Br. at 18).[6] Rushmore seemingly ignores its own violation of a court order mandating good faith

---

[6] On appeal, Rushmore argues the "Loss Mitigation Program of the United States Southern District of New York is in direct contravention to the Bankruptcy Code" because the program prohibits secured creditors from lifting the automatic stay and therefore creates a coercive environment that "strong-arm[s] creditors into modifications favorable to Debtors." (Reply Br. at 1). Rushmore raises this argument for the first time on appeal and offers no excuse for failing

participation in loss mitigation. That court order sought to force the parties to communicate openly to increase the likelihood that the parties could arrive at a consensual resolution regarding the home.

To hold a party in civil contempt, a court must find that (i) the order the party failed to comply with is clear and unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not diligently attempted to comply in a reasonable manner. See Latino Officers Ass'n City of New York, Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009). As discussed above, the bankruptcy court's finding that Rushmore violated the terms of the loss mitigation order by failing to participate in good faith was not erroneous. Accordingly, the bankruptcy court's contempt order was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order is AFFIRMED.

The Court declines to award attorney's fees and costs to appellee for having to oppose the appeal.

The Clerk is instructed to close this case.

Dated: January 11, 2016
       White Plains, NY

SO ORDERED.

_____
Vincent L. Briccetti
United States District Judge

---

to raise it during the bankruptcy proceedings. Because this issue was not raised below, and no manifest injustice would result from a waiver, the argument has been waived and will not be considered by this Court. See In re Lionel Corp., 29 F.3d 88, 92 (2d Cir.1994) (party waived argument by failing to present it to bankruptcy court or district court and no manifest injustice would result from waiver); see also In re Best Payphones, Inc., 432 B.R. 46, 60 (S.D.N.Y. 2010) aff'd, 450 F. App'x 8 (2d Cir. 2011).